UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAYSON MAGLAYA,<br><br>  Petitioner,<br><br>v.<br><br>PEOPLE OF THE STATE OF CALIFORNIA,<br><br>  Respondent. | No. 2:16-cv-02694-TLN-CKD P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a state prisoner proceeding pro se in this habeas corpus action filed pursuant to 28 U.S.C. § 2254. Respondent has answered the first amended habeas petition, ECF No. 18, and petitioner has filed a traverse. ECF Nos. 27-28. Upon careful consideration of the record and the applicable law, the undersigned recommends that the petition be denied for the reasons explained below.

**I.   Factual and Procedural Background**

Following a jury trial in the Nevada County Superior Court, petitioner was convicted of attempted murder and assault with a deadly weapon. Petitioner was sentenced to 28 years to life in prison based on the jury's findings that he had two prior serious or violent felony convictions. The California Court of Appeal affirmed petitioner's convictions on May 26, 2015. State Lodged Document No. 10 (direct appeal opinion). Petitioner did not file any state habeas corpus petitions before filing the present § 2254 action in this court.

In affirming the judgment on appeal, the California Court of Appeal, Third Appellate District, summarized the facts as follows:[1]

> Petitioner[2] worked as a produce clerk and bagger for a grocery store in July 2012. The grocery store issued him a box cutter in connection with his duties.
>
> On July 15, 2012, the grocery store suspended petitioner due to an incident in the store. Later that day, petitioner saw an acquaintance named Joshua Kelgard at a shopping center. The two spoke cordially for a few minutes, but Kelgard was uncomfortable because he was a protected party in a restraining order against defendant. Kelgard's ex-wife, who was involved in a relationship with petitioner's brother at the time, had filed for the restraining order three to four years earlier. Petitioner and Kelgard ended their conversation, shook hands, and parted ways.
>
> Kelgard met his friend Ashley Nachand and they walked to get something to eat. As Kelgard and Nachand stood next to each other at a deli counter, petitioner approached them from behind, stepped between them, put his hand on Kelgard's left shoulder, and used a sharp instrument to strike him in the chest and face. Kelgard ran away from petitioner and petitioner fled the grocery store.
>
> The treating physician testified that Kelgard suffered a circular stab wound to his chest and a laceration to his face. The chest wound had clean margins and no bruising. The wound had characteristics of a penetrating injury from a sharp object. The face wound was linear with no oozing. Either wound could have been life-threatening if it had penetrated deeper into the body. The injuries were not consistent with being punched, and it was unlikely that the injuries were caused by keys or a credit card. No stabbing instrument was ever recovered.
>
> That evening, police officers found petitioner hiding underneath his stepfather's deck and arrested him. Petitioner spontaneously stated, "I did not stab anyone."
>
> Against the advice of counsel, petitioner testified that he did not remember going to the grocery store on the day of the incident or trying to stab Kelgard. Petitioner said he liked Kelgard and had no intention of killing him. Petitioner denied carrying a box cutter.
>
> Petitioner said that at the time of the stabbing he was paranoid and believed that his parents were poisoning his food. He said he observed unplugged electrical devices turning on in his presence, experienced a high-pitched ringing in his ears that may have been

---

[1] These factual findings are entitled to a presumption of correctness pursuant to 28 U.S.C. § 2254(e)(1). However, the court has independently reviewed the record and concluded that there is nothing to rebut this presumption of correctness in this case.

[2] All references to "appellant" in the state court opinion have been changed to "petitioner" to reflect the current case status.

2

caused by sensitivity to electricity, noticed the presence of 'condensed energy' in his neighborhood, perceived people acting in a threatening manner towards him, and perceived that people in the community were communicating in code. Petitioner deciphered the code by assigning numerical values to letters of the alphabet. Petitioner thought Kelgard and his friends may have been threatening him because they had put the restraining order on him.

During closing argument, the prosecutor stated: 'I talked briefly in the beginning about concept [sic] of reasonable doubt, as well as the judge's instructions, boiled down is reasonable equals reason. Again, it does not mean beyond all doubt, it's a doubt with a reason you can attach to it. It's a reason you can explain to your fellow jurors and you can all agree on.' Defense counsel did not object.

Then, during defense counsel's closing argument, defense counsel addressed the absence of a weapon: 'I think we can take a look at the evidence and look at it really closely and you will find there wasn't much in the way of a weapon there; that it probably, in fact, was the box cutter that I held up. That there was a big knife there, no one found a knife, no one saw a knife, no one testified that they saw him throw a knife away, anything like that. [¶] Officers looked around his house, they looked in the vicinity, they said they looked in the bushes, no one found a sharp-edge weapon or anything like that. [¶] I simply can't believe that my client was attempting to kill Mr. Kelgard.'

In his closing summation, the prosecutor responded: 'The next thing [defense counsel] also decided to talk about was box cutters, not much of a weapon. [¶] Do you remember 9-11? Box cutters were on that plane and yet the whole plane of people did not stop there [sic]. [¶] … I want you to look at the photos of the [location] where the blood trail leads out and the trail of blood at the very end. You have to ask yourself, at that point, is it not reasonable to think that a sharp object is not used? I say that it's not.' Again, defense counsel did not object.

Then, when the prosecutor turned to a different subject, defense counsel objected and the trial court stated: 'Did I mention objections during closing arguments? Let's let him finish and if that's an issue, we'll deal with it.' No objections were made at the conclusion of the closing arguments.

## II. Amended Federal Habeas Petition

In his amended federal habeas application, petitioner raises two prosecutorial misconduct claims that occurred during closing argument to the jury. First, petitioner contends that the prosecutor misrepresented the reasonable doubt standard to the jury. Second, petitioner asserts that the prosecutor inflamed the passions of the jury by referring to the use of box cutters during the September 11, 2001 attacks. Because petitioner's defense counsel failed to object to either

3

comment by the prosecutor, petitioner also asserts that his trial attorney was ineffective and that any procedural default of his prosecutorial misconduct claims should be excused on this basis. It is not clear to the court whether petitioner raises the ineffective assistance of counsel as a free-standing claim for relief or just as a basis to excuse his procedural default. Liberally construing petitioner's claims, the court will review the ineffectiveness challenge as a free-standing claim for relief as well as a basis to excuse petitioner's procedural default.

### III. Legal Standards

#### A. Federal Habeas Corpus Standard

An application for a writ of habeas corpus by a person in custody pursuant to a state court judgment can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.2d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following limitation on the granting of federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different, as the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's

4

> application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

Relief is also available under the AEDPA where the state court predicates its adjudication of a claim on an unreasonable factual determination. 28 U.S.C. § 2254(d)(2). The statute explicitly limits this inquiry to the evidence that was before the state court. See also Cullen v. Pinholster, 563 U.S. 170 (2011). Under § 2254(d)(2), factual findings of a state court are presumed to be correct subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." It makes no sense to interpret "unreasonable" in § 2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the factual error must be so apparent that "fairminded jurists" examining the same record could not abide by the state court factual determination. Therefore, a petitioner must show clearly and convincingly that the factual determination is unreasonable. See Rice v. Collins, 546 U.S. 333, 338 (2006).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

/////

5

**B. Prosecutorial Misconduct**

A defendant's due process rights are violated when a prosecutor's misconduct renders his or her trial "fundamentally unfair." Darden v. Wainwright, 477 U.S. 168, 181 (1986). In the context of closing arguments, the Supreme Court has held that it "is not enough that the prosecutors' remarks [be] undesirable or even universally condemned." Darden, 477 U.S. at 181. Rather, the improper comments must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Id.

**C. Ineffective Assistance of Counsel**

The two prong Strickland standard governing ineffective assistance of counsel claims is well known and oft-cited. Strickland v. Washington, 466 U.S. 668 (1984). It requires petitioner to establish (1) that counsel's representation fell below an objective standard of reasonableness; and, (2) that counsel's deficient performance prejudiced the defense. Strickland, 466 U.S. at 692, 694. "The question is whether an attorney's representation amounted to deficient performance under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." Harrington v. Richter, 562 U.S. 86, 105 (2011) (citing Strickland, 466 U.S. at 690). Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 693. "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." Cullen v. Pinholster, 563 U.S. 170, 189 (2011) (quoting Richter, 562 U.S. 86, 111-12 (2011)).

In reviewing a Strickland claim under the AEDPA, the federal court is "doubly deferential" in determining whether counsel's challenged conduct was deficient. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 562 U.S. 86, 105 (2011).

**D. Procedural Default**

The procedural default doctrine forecloses federal review of a state prisoner's federal habeas claims if those claims were defaulted in state court pursuant to an independent and

6

adequate state procedural rule. See Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). Generally, "federal habeas relief will be unavailable when (1) 'a state court [has] declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement,' and (2) 'the state judgment rests on independent and adequate state procedural grounds,'" Walker v. Martin, 562 U.S. 307, 316 (2011) (quoting Coleman, 501 U.S. at 729-30). A state procedural rule is "adequate" only if it is clear, consistently applied, and well established at the time of petitioner's default. Walker, 562 U.S. at 316; Calderon v. United States Dist. Court, 96 F.3d 1126, 1129 (1996). The respondent bears the burden of proof with respect to the "adequacy" of a state procedural bar. Bennett v. Mueller, 322 F.3d 573, 585-86 (9th Cir. 2003). "[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263 (1989). Furthermore, a federal habeas court may still consider the merits of an otherwise procedurally defaulted claim if the petitioner successfully makes a showing of "cause" and "prejudice" or that a fundamental miscarriage of justice will results. See Martinez v. Ryan, 566 U.S. 1, 10-11 (2012) ("A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law."); Coleman, 501 U.S. at 750.

**IV. Analysis**

In this case, the last reasoned state court decision addressing petitioner's prosecutorial misconduct claims applied a state procedural rule to bar review. See ECF No. 10 at 8-10. The California Court of Appeal found the claims forfeited for failing to object to them at trial after finding that in both instances an objection was not a futile act. Id. California's rule requiring a contemporaneous objection to preserve issues for appeal has been deemed to be independent and adequate to bar federal review of constitutional claims. See Fairbank v. Ayers, 650 F.3d 1243, 1256-57 (9th Cir. 2011) (finding that California's contemporaneous objection rule was independent and adequate to bar federal review when a defense attorney failed to object to alleged prosecutorial misconduct). Respondent has therefore met its burden of proving a state court rule barring review of the prosecutorial misconduct claims. See Bennett v. Mueller, 322 F.3d 573,

585-86 (9th Cir. 2003) (adopting a burden shifting approach to reviewing procedural default issues). Petitioner does not challenge the independence or adequacy of California's contemporaneous objection rule. Accordingly, petitioner's prosecutorial misconduct claims are procedurally defaulted and this court may not reach the merits unless there is cause for the default and prejudice resulting from the constitutional violation. See Coleman v. Thompson, 501 U.S. at 750; Martinez, 566 U.S. 1, 10-11.

In this case, petitioner argues that the procedural default should be excused based on the ineffectiveness of his trial attorney for failing to object. To establish ineffective assistance, petitioner has to demonstrate that his trial attorney's failure constituted both deficient performance and resulted in prejudice. See Strickland v. Washington, 466 U.S. 668 (1984). "An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve…." Harrington v. Richter, 562 U.S. at 105 (2011). Even assuming counsel's performance was deficient, there is no prejudice resulting from the challenged conduct. See Strickland, 466 U.S. at 697 (stating that a court need not address both prongs of ineffective assistance of counsel claims if petitioner makes an insufficient showing on one prong). It simply cannot be said that there is a reasonably likelihood of a different outcome in this case had trial counsel objected to two brief portions of the prosecutor's closing argument. See Strickland, 466 U.S. at 693. The evidence of petitioner's guilt not only included an identification by the victim who knew petitioner for years, but also a videotape of the assault committed inside the grocery store.[3] The defense at trial focused on whether petitioner intended to kill Mr. Kelgard in stabbing him twice and then running away. See Lodged Document No. 6 at 1002 (defense counsel's closing argument emphasizing that if petitioner "wanted to kill him, he would have killed Mr. Kelgard."). However, the location of both stab wounds in the chest and face near the carotid

---

[3] The court's finding of deficient performance for the sake of judicial economy is in no way a comment on trial counsel in this case who had the unenviable task of defending a client whose crime was recorded on video tape.

8

artery and jugular vein, sufficiently indicated an attempt to inflict life-threatening injuries. In this case, the jury took just an hour and a half to review the evidence before finding petitioner guilty of the charged offenses. Lodged Document No. 6 at 1015 (indicating that the jury deliberated between 2:38 p.m. and 4:12 p.m.). Here there is no reasonable probability of a different outcome had counsel objected during closing argument to the prosecutor's asserted misconduct. Thus, reviewing the ineffective assistance of counsel claim de novo for purposes of excusing petitioner's procedural default, the undersigned finds that this claim fails based on lack of prejudice. See Visciotti v. Martel, 862 F.3d 749, 769 (9th Cir. 2016) (joining several circuit courts of appeal in concluding that the AEDPA standard of review does not apply to ineffective assistance of counsel claims used to excuse the procedural default of an underlying claim for relief). Accordingly, petitioner has failed to demonstrate that the procedural default of his underlying prosecutorial misconduct claims should be excused.

The only issue remaining for the court to decide is whether petitioner is entitled to relief under the AEDPA liberally construing his ineffective assistance of counsel claim as a free-standing claim for relief. For purposes of AEDPA review, the last reasoned state court opinion on petitioner's ineffective assistance of counsel claim is the California Court of Appeal decision on direct review. See State Lodged Document No. 10. The Court of Appeal rejected the ineffectiveness claims finding that there was no prejudice resulting from counsel's challenged conduct in light of the jury instructions on the burden of proof beyond a reasonable doubt as well as a separate instruction telling the jury to follow the court's instructions if they believe that an attorneys' comments on the law conflicted with the court's instructions. See State Lodged Document No. 10 at 7-9, 11-12. In conducting its prejudice analysis, the state court also emphasized the evidence against petitioner "even if not overwhelming, was stronger than [petitioner] acknowledges." State Lodged Document No. 10 at 11. The California Court of Appeal's decision is not an objectively unreasonable application of the Strickland standard and does not entitle petitioner to relief pursuant to 28 U.S.C. § 2254(d)(1).

For all these reasons, the undersigned recommends denying petitioner's first amended application for federal habeas relief.

## V. Plain Language Summary for Pro Se Party

Because petitioner is acting as his own attorney in this case, the court wants to make sure that this order is understood. The following information is meant to explain this order in plain English and is not intended as legal advice.

The court has reviewed the claims in your amended federal habeas petition as well as the trial record in your case and concluded that the prosecutorial misconduct claims are procedurally defaulted. After reviewing your allegations of ineffective assistance of counsel, the court has concluded that they lack merit and therefore do not excuse the procedural default of your remaining prosecutorial misconduct claims or provide an independent basis for relief. If you disagree with this outcome, you can explain why by filing "Objections to the Magistrate Judge's Findings and Recommendations" within 21 days from the date of service of this order.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 21 days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant). A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may

////

////

////

waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: September 26, 2019

/s/ Carolyn K. Delaney
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

12/magl2694.f&r.docx